COLLOTON, Circuit Judge.
Terry Gale Plunk, an Arkansas prisoner, petitioned for a writ of habeas corpus in federal district court, pursuant to 28 U.S.C. § 2254. A magistrate judge[1] held an evidentiary hearing and recommended denial of the petition. The district court[2] adopted the recommended findings and disposition, dismissed the petition, and granted a certificate of appealability on all issues. Plunk appealed, and a panel of this court vacated the judgment of the district court and remanded for further proceedings. Plunk v. Hobbs, 719 F.3d 977 (8th Cir.2013). We granted the State’s petition for rehearing en banc and now affirm the judgment of the district court.
I.
Law enforcement officers in Arkansas received multiple reports in April 2006 that Plunk possessed a large quantity of methamphetamine. One evening that month, officers attempted to effect a traffic stop while Plunk was driving his truck. Plunk refused to halt and led officers on a high-speed chase — much of it recorded on video — during which Plunk drove through stop lights, rammed police vehicles, wove through a crowded parking lot, and threw baggies of methamphetamine out of the truck.
Plunk was arrested and charged with multiple offenses related to the chase and his possession of methamphetamine and firearms. Officers discovered more methamphetamine and evidence of drug activity when they executed a search warrant at the residence Plunk shared with his girlfriend, Deborah Devries. Police arrested Devries for offenses related to her possession of drugs and firearms and attempts to destroy evidence.
After Plunk was released pending trial, he was arrested again in August 2006 while attempting to deliver methamphetamine from his vehicle to an undercover officer. As police officers approached *763 Plunk, he began to back out of a parking space, causing one officer to believe that Plunk was going to hit him. That officer shot Plunk in the shoulder. Plunk was arrested and charged with attempted capital murder of the police officer, as well as multiple drug offenses.
Plunk retained Phillip Moon to represent him in both the April and August cases. Devries was initially represented by a public defender on her April case, but Plunk later hired Moon to represent her as well. According to Moon, he talked with Plunk at length about the dangers of joint representation and also discussed the topic with Devries. App. 491-92. Plunk disputes this point, and the district court deemed it unnecessary to make a definitive factual finding. R. Doc. 183, at 43.
While Moon represented both Plunk and Devries, he negotiated a “package plea deal” with prosecuting authorities to resolve all charges against Plunk and Dev-ries. Under the proposed agreement, Plunk would plead guilty to all of the pending charges, including the attempted capital murder charge, and receive a life or life-equivalent sentence, while Devries would plead guilty to drug charges and receive a sentence of probation. When Moon presented the offer to Plunk, he promptly rejected it, because he refused to accept any plea offer that required a plea of guilty to attempted capital murder. The cases remained set for trial.
Moon thought the April case involving Plunk’s video-recorded flight would be difficult to defend, but he believed the attempted capital murder charge from August was “very defensible.” The attempted murder case was tried first, in July 2007. Moon presented a defense that Plunk did not attempt to murder the police officer, because his poor eyesight and obstructed view from inside the car prevented him from seeing the officer. The jury acquitted Plunk of the attempted capital murder charge but convicted him on two drug trafficking charges.
At a sentencing hearing before the same jury, the prosecution prepared to present the video recording of the April police chase. Moon feared the jury — upon viewing the aggravated circumstances of Plunk’s flight from police — would regret rendering its acquittal and sentence Plunk to the maximum sentence available on the drug trafficking charges. Moon approached the prosecutor and negotiated a plea agreement to resolve both of Plunk’s cases. The agreement, which Plunk accepted, provided for seventy-two years of imprisonment on the charge of possession of methamphetamine with intent to distribute and shorter concurrent sentences to resolve the remaining charges. Plunk waived his right to appeal the convictions and sentences, and he did not seek state post-conviction relief.
For her part, Devries pleaded guilty in January 2008 to charges arising from her arrest in April 2006 and to additional charges of furnishing contraband to Plunk while he was in jail. The court sentenced her to 120 days in jail and to concurrent 10-year and 1-year sentences of probation.
In July 2008, Plunk petitioned for a writ of habeas corpus, alleging that he received ineffective assistance from Moon. The district court held an evidentiary hearing, assumed without deciding that Plunk could overcome defenses of procedural default and statute of limitations, and denied Plunk’s claims on the merits. Plunk raised four points on appeal, and a panel of this court reversed and remanded on one ground without reaching the other three.
We granted rehearing en banc. Because Plunk did not exhaust his claims in state court, the claims have not been adjudicated on the merits in state court *764 proceedings, and the standards of 28 U.S.C. § 2254(d) do not apply. In that circumstance, we review the district court’s findings of fact for clear error and its conclusions of law de novo. Like the district court, we resolve Plunk’s claims on the merits, see 28 U.S.C. § 2254(b)(2), and we deem it unnecessary to address the statute of limitations and procedural default.
II.
A.
We address first the argument that drew the attention of the three judge panel. Plunk argues that attorney Moon labored under an actual conflict of interest when he jointly represented both Plunk and Devries. Plunk contends that Moon’s conflict affected the adequacy of his representation and that he is entitled to relief without any additional showing of prejudice under the rule of Cuyler v. Sullivan, 446 U.S. 335, 349-50, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).
Sullivan provides that we presume prejudice when a conflict of interest arising from multiple representation adversely affected counsel’s representation. The presumption arises because when joint representation of conflicting interests has an adverse effect on counsel’s performance, it is difficult “to measure the precise harm arising from counsel’s errors.” Mickens v. Taylor, 535 U.S. 162, 168, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002). A rule requiring a defendant to show specific prejudice “would not be susceptible of intelligent, evenhanded application.” Holloway v. Arkansas, 435 U.S. 475, 490, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). When a defendant shows that counsel refrained from pursuing a particular strategy or tactic on his behalf because of loyalty to another extant client, there is no effective way to determine what would have happened if counsel had performed without a conflict of interest. Especially in the context of plea negotiations, “to assess the impact of a conflict of interests on the attorney’s options, tactics, and decisions in plea negotiations would be virtually impossible,” and an inquiry into harmlessness of the error would require “unguided speculation.” Id. at 491, 98 S.Ct. 1173.
To trigger the presumption of prejudice, however, a petitioner who did not object at trial must show that a conflict of interest “significantly affected counsel’s performance.” Mickens, 535 U.S. at 173, 122 S.Ct. 1237. The purpose of the Sullivan rule “is not to enforce the Canons of Legal Ethics,” id. at 176, 122 S.Ct. 1237, and there is no per se rule that a defendant who is advised by the same attorney as a co-defendant is deprived of his right to effective assistance of counsel under the Sixth Amendment. Holloway, 435 U.S. at 482, 98 S.Ct. 1173. A habeas petitioner invoking Sullivan must “identify a plausible alternative defense strategy or tactic that [his] defense counsel might have pursued, show that the alternative strategy was objectively reasonable under the facts of the case, and establish that the defense counsel’s failure to pursue that strategy or tactic was linked to the actual conflict.” Covey v. United States, 377 F.3d 903, 908 (8th Cir.2004) (internal quotations omitted). If a petitioner claiming ineffective assistance of counsel cannot show that a conflict of interest significantly affected counsel’s performance, then he must establish deficient performance and prejudice under the ordinary standards of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
Plunk argues that Moon was acting under a conflict of interest when he negotiated a package plea agreement for both Plunk and Devries. He cites two ways in *765 which the conflict adversely affected Moon’s performance in the negotiations.
First, Plunk contends that Moon’s conflict of interest prevented him from seeking a better plea agreement for Plunk alone. A conflict of interest may adversely affect counsel’s representation when it prevents an attorney from exploring potential plea opportunities, but only when “a lesser charge or a favorable sentencing recommendation would be acceptable” to the prosecution. Holloway, 435 U.S. at 489-90, 98 S.Ct. 1173. If the prosecutor would not have been receptive to a more favorable plea bargain, then there is no basis to conclude that any conflict of interest harmed the lawyer’s advocacy. Burger v. Kemp, 483 U.S. 776, 785-86, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987).
After an evidentiary hearing, the district court concluded that Moon’s joint representation did not adversely affect Plunk’s defense during the negotiation of the package plea agreement. The district court found that “all ... proposals by the prosecution would have required Petitioner to plead guilty to attempted capital murder,” but that Plunk “refused to take any plea deal that involved pleading guilty to the attempted capital murder.” In other words, Moon’s potential conflict of interest did not prevent Moon from negotiating a more favorable agreement for Plunk, because no better deal was available.
The record supports the district court’s conclusion. When asked why the package plea agreement never happened, Prosecutor Bradford testified that Moon asked for a plea offer that would not require Plunk to plead guilty to attempted capital murder, but that “the State was not in a position to [nolle pros ] or to not include that charge in the plea negotiations.” App. 560. He explained that the inability to reach an agreement on the attempted murder charge “was ultimately what led to us having to try the case.” Id. Moon explained that Plunk did not feel the attempted murder charge was justified, and that avoiding a conviction on that offense was most important to Plunk. Id. at 442. But Moon also perceived that the State was “like a dog with rabies” in its prosecution of Plunk, and that attempted murder was the most important charge to prosecutors. Id. at 444. The parties thus reached loggerheads when the State insisted on a conviction for attempted murder and Plunk refused to plead guilty to that offense. Moon’s representation of Devries did not adversely affect his negotiations on behalf of Plunk, because Plunk was unwilling to plead guilty to attempted murder, and the State was unwilling to forego that charge.
In concluding that Moon labored under a conflict of interest that adversely affected his representation, the dissenting opinion asserts that Plunk did not accept the package plea agreement because Moon was having difficulty getting Plunk to understand the proposal. We are presented, however, with a factual finding of the district court that Plunk rejected the plea agreement because that proposal, and all others, would have required him to plead guilty to attempted capital murder. We may reject the finding only if it is clearly erroneous, after allowing “for the advantages possessed by the trial court in appraising the significance of conflicting testimony.” Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 336 U.S. 271, 275, 69 S.Ct. 535, 93 L.Ed. 672 (1949). The evidence cited by the dissent does not leave us with a “definite and firm conviction that a mistake has been committed.” United States v. U.S. Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948). The district court’s finding is supported by ample evidence, including Bradford’s testimony described above and Plunk’s own *766 testimony that he rejected the package plea agreement because he refused to accept any agreement that required him to plead guilty to attempted capital murder. App. 354, 372. That the record includes arguably conflicting testimony does not make the district court’s finding clearly erroneous.
The dissent also reasons that Moon’s conflict of interest prevented him from attempting to negotiate an agreement calling for a lesser punishment than the 99-year prison term specified in the proposed package agreement. The suggestion is that Prosecutor Bradford would have been willing to consider mitigating evidence from a competency report or to entertain offers to cooperate in a drug trafficking investigation. But the prosecutor never said the State would have been willing to consider dropping the attempted capital murder charge, and Plunk simply refused to plead guilty to that charge. It matters not whether Moon might have been able to negotiate a lesser sentence for a guilty plea to attempted capital murder, because his client professed innocence and was unwilling to plead guilty to that offense. Prosecutor Bradford, moreover, testified that while he is willing to consider extenuating circumstances disclosed in a defendant’s forensic report on competency, he did not see “anything” in Plunk’s report that he “would deem to be mitigating.” App. 591. As for potential cooperation, the district court found — with ample support in the record — that no matter what Moon might have attempted to negotiate, Plunk failed to demonstrate he actually would have been willing to cooperate with law enforcement. R. Doc. 183, at 67-68.
Second, Plunk asserts that Moon’s advice to accept the package plea agreement was by itself sufficient to show an adverse effect on Moon’s performance, because a conflict-free attorney would not have recommended the agreement that Plunk rejected. To accept this contention would expand the rule concerning presumption of prejudice. Unlike Plunk’s case, the published authorities in this area concern whether a defendant is entitled to relief when he followed advice of a conflicted attorney, either to plead guilty or to decline a plea agreement. See, e.g., Berry v. United States, 293 F.3d 501, 504 (8th Cir.2002); Hall v. United States, 371 F.3d 969, 974 (7th Cir.2004); Thomas v. Foltz, 818 F.2d 476, 483 (6th Cir.1987). If a defendant follows counsel’s recommendation, foregoes an alternative line of defense, and shows that the attorney’s advice was influenced by a conflict of interest, then prejudice may be presumed.
Plunk argues that even where a defendant immediately rejects counsel’s advice to plead guilty, and the litigation then proceeds in a different direction, he is entitled to a presumption of prejudice with respect to everything that follows. We find no authority to support this proposition, and we decline to adopt it. Sullivan’s presumption of prejudice adheres because a conflict of interest significantly affected counsel’s performance, and the effect on performance could have affected the outcome of the proceedings, but it is impractical to measure the harm resulting from counsel’s errors. In Plunk’s scenario, however, it is clear that there was no harm whatever: Plunk immediately rejected Moon’s recommendation to plead guilty. Moon then pursued an alternative defense strategy that Plunk preferred. It is not necessary to speculate about the impact of Moon’s advice to plead guilty on his defense of the cases, because the effect was zero. The Sullivan prophylactic rule is designed to protect a defendant when it is impossible to reconstruct what might have occurred without counsel’s conflict of interest. To extend that rule to Plunk’s sitúa *767 tion would grant an unwarranted windfall to a defendant who plainly suffered no harm as a result of advice that he promptly rejected.
We therefore reject Plunk’s contention that Moon’s advice to accept the package plea agreement justifies a presumption of prejudice and relief under the Sixth Amendment. The district court correctly dismissed this claim.
B.
Plunk also suggests that Moon’s conflict of interest caused Moon to forego an investigation of Plunk’s mental defects that could have been used in plea negotiations and court proceedings. Plunk alleges that a competent investigation would have uncovered evidence of his mental retardation, as worsened by a traumatic brain injury he suffered in 1999. He contends that evidence of his mental problems would have supported (1) an affirmative defense that he lacked the capacity to follow the law, (2) a claim of incompetence to stand trial, and (3) an argument for leniency in plea negotiations or sentencing. Plunk theorizes that Moon did not look for such evidence because he was attempting to emphasize Plunk’s culpability in order to downplay Devries’s.
The district court rejected Plunk’s theory that Moon sought to shift liability from Devries to Plunk, finding “no proof that this took place.” Plunk relied on the statement of a prosecutor in the second case involving Devries — in which she was prosecuted for furnishing prohibited articles to Plunk in jail — that Moon had “emphasized greatly” that Devries had been “led astray” by Plunk. Referring to this colloquy, however, the district court found that Plunk’s “sole evidence” about Moon’s shifting culpability to Plunk came during a hearing that occurred after Plunk’s case was already final, and that this evidence could not establish that Moon’s performance was adversely affected during Plunk’s case. The district court found “no other evidence in the record” of Moon’s attempting to emphasize Plunk’s culpability or minimize Devries’s.
Plunk asserts that there was other evidence: Moon’s failure to emphasize Plunk’s intellectual disability was itself proof of an adverse effect on representation, because an objective observer could conclude that Moon was acting to preserve the blame-shifting argument for Devries to use in her later case. To show the required adverse effect, however, Plunk must establish “that the conflict caused the attorney’s choice,” and “that the defense counsel’s failure to pursue that strategy or tactic was linked to” the conflict. Covey, 377 F.3d at 908 (internal quotations omitted); see also Winfield v. Roper, 460 F.3d 1026, 1039 (8th Cir.2006). He must show that the adverse effect on his case was “actual and demonstrable,” not merely “abstract or theoretical.” Covey, 377 F.3d at 908 (internal quotation omitted). Because Plunk offered only theoretical ways in which the conflict could have caused Moon’s alleged deficiency, we find no error in the district court’s conclusion that Plunk “simply failed to prove” this claim.
Alternatively, Plunk argues that Moon’s failure to present evidence of intellectual disability was ineffective assistance under the Strickland standard. The district court found that Plunk does suffer from some mental impairment that could have been relevant to his defense, and that evidence could have been available about his difficulty in school, difficulty completing ordinary life tasks, and traumatic brain injury. The district court thought Moon’s failure to investigate Plunk’s impairments beyond obtaining one psychiatric evaluation fell below the Strickland “objective *768 standard of reasonableness,” but concluded that Plunk failed to show prejudice.
We find it unnecessary to endorse or reject the conclusion that Moon’s performance fell below the range of competence demanded of attorneys in criminal cases. Assuming deficient performance for the sake of analysis, we agree with the district court that Plunk has not shown prejudice.
On Plunk’s claim that he would have been found incompetent to stand trial, we agree with the district court that any additional evaluations were likely to reach the same result as the first one. The psychiatrist’s report determined that Plunk understood the legal system and the charges against him. Plunk was no stranger to the legal system, and he invoked his right to remain silent in several interrogations. The district court found that Plunk did have the ability to “have meaningful discussions about all the facts” early in trial preparation, that he was able to assist in the fact-intensive trial preparation of the defense on the attempted murder charge, and that Plunk’s own testimony at the hearing showed his assistance in the defense. Although Plunk’s expert raised “concerns” about Plunk’s competency at the time of trial, he did not offer an opinion on the issue. Plunk thus did not carry his burden to show a reasonable probability that he would have been found incompetent to stand trial.
We also agree with the district court that Plunk did not show prejudice in plea negotiations or at sentencing arising from Moon’s failure to develop mitigating mental evidence. The prosecutor testified that due to the seriousness of the charges, only “compelling” mitigating evidence would have affected his plea offers, and Plunk’s proffered evidence does not rise to that level. As to sentencing, if Plunk had eschewed the plea agreement reached after the acquittal on attempted murder and proceeded to sentencing on the drug trafficking charges of which he was convicted, the result may well have been worse. Regardless of evidence on Plunk’s mental capacity, a jury would have seen video evidence of Plunk’s reckless flight from officers in April 2006 and learned of his extensive criminal history. Counsel aptly recognized a substantial risk that the jury would regret acquitting Plunk on the attempted murder charge and choose life imprisonment as punishment. Plunk has not demonstrated a reasonable likelihood that developing evidence of mental deficiency and proceeding before a jury would have improved the outcome.
C.
Plunk also claims that Moon’s joint representation adversely affected his representation of Plunk because Moon’s divided loyalty led him to ask Devries to testify against Plunk. Devries averred that she saw Moon speaking with a prosecutor, and that Moon then told her that the prosecutor wanted her to testify against Plunk. Moon disputed this account and testified that neither he nor the prosecutor ever asked Devries to testify against Plunk. The prosecutor further explained that he would never ask a co-defendant to testify against another when both were represented by the same counsel.
The district court found that “the request did not occur.” This credibility finding is not clearly erroneous. Plunk argues that the district court misunderstood the issue and focused incorrectly on whether the prosecutor sought Devries’s testimony when the claim is that Moon suggested that she implicate Plunk. But Devries’s statement was that Moon told her the prosecutor wanted to know if she would testify against Plunk. So when the district court credited the prosecutor’s denial, it was appropriate for the court also to dis *769 count Devries’s testimony that Moon relayed a request from the prosecutor.
D.
Plunk contends finally that Moon rendered ineffective assistance under Strickland by failing to advise him accurately about when he would be eligible for parole under the plea agreement that Plunk accepted. At the time, the Supreme Court of Arkansas had ruled that counsel had no constitutional duty to inform a client about the specifics of parole eligibility, Buchheit v. State, 339 Ark. 481, 6 S.W.3d 109, 111-12 (1999), and this court held that the state court’s decision did not involve an unreasonable application of clearly established federal law. Buchheit v. Norris, 459 F.3d 849, 853 (8th Cir.2006). Although some courts subsequently have extended the reasoning of the Supreme Court’s decision in Padilla v. Kentucky, 559 U.S. 356, 369, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010) — concerning advice about deportation consequences — to require advice about parole eligibility, e.g., Commonwealth v. Pridham, 394 S.W.3d 867, 878 (Ky.2012); Ex Parte Moussaza-deh, 361 S.W.3d 684, 690-91 (Tex.Crim. App.2012), any such extension of the Sixth Amendment would be a new rule of constitutional law, inapplicable on collateral review. See Chaidez v. United States, — U.S.-, 133 S.Ct. 1103, 185 L.Ed.2d 149 (2013) (holding that Padilla does not apply retroactively).
In any event, the district court also found that even if Moon had advised Plunk that he would be eligible for parole in eighteen years, rather than the five years that Plunk understood, Plunk would not have rejected the plea agreement and opted for sentencing by a judge or jury. The court’s credibility finding that Plunk’s “self-serving, after-the-fact statements” were inadequate is not clearly erroneous. Having failed to show a reasonable probability that different advice about parole eligibility would have changed the outcome of the proceeding, Plunk cannot show prejudice. See Hill v. Lockhart, 474 U.S. 52, 60, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).
For the foregoing reasons, the judgment of the district court is affirmed.

. The Honorable Jerry W. Cavaneau, United States Magistrate Judge for the Eastern District of Arkansas.

. The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas.