J-A18009-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| JOHN J. BERNADOWSKI AND BONNIE L. BERNADOWSKI | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 1234 WDA 2018 |
| AMERIPRISE FINANCIAL, INC.; | : | |
| AMERIPRISE FINANCIAL SERVICES, | : | |
| INC.; RIVERSOURCE LIFE | : | |
| INSURANCE COMPANY AND DANIEL | : | |
| S. HENDERSON | : | |

Appeal from the Judgment Entered August 28, 2018
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  No. GD-01-008101

BEFORE:  BOWES, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY BOWES, J.:                           FILED JANUARY 24, 2020

John J. and Bonnie L. Bernadowski appeal from the August 28, 2018 judgment in favor of Ameriprise Financial, Inc., Ameriprise Finance Services, Inc., Riversource Life Insurance Company, and Daniel S. Henderson (collectively "Ameriprise"), on their claims under the Unfair Trade Practices and Consumer Protection Law ("UTPCPL").  After thorough review, we affirm.

The facts relevant to the Bernadowskis' claims are as follows.  In 1995, John received a gift of $23,000 from his father.  He contacted Ameriprise to discuss investing the money, and he and Bonnie subsequently met with Ameriprise financial advisor Daniel Henderson.  John, age forty-nine at the

time, conveyed that it was his goal to retire at age sixty, and that he hoped that the gift from his father might help him achieve that goal.

The Bernadowskis paid $400 for a detailed financial analysis of their future needs in retirement. The analysis revealed that their savings were insufficient to enable John to retire at age sixty. Assuming a four percent inflation rate, $39,000 to invest, and three different hypothetical after-tax interest rates, Ameriprise offered them several plans to try to meet their retirement goal. Mr. Henderson recommended that John increase his contributions to his employer's qualified retirement plan by six percent. He also advised John to transfer $39,329 from cash assets and bonds into a flexible annuity as it would afford the growth opportunity of equities, with the added benefits of tax deferral and flexibility. The model allocation showed an 11.25% return, based on annualized historic before-tax rates of returns for similar investments. However, it expressly stated that there was no guarantee that the investment would continue to provide the same return it had in the past.

Despite the foregoing recommendations, Mr. Bernadowski did not increase his annual contribution to his work retirement plan. Nor did he place a lump sum of $39,000 into the variable annuity. Rather, he deposited $3,037 into the annuity, and contributed an additional $1,500 per month. As of May 1997, Mr. Bernadowski had paid $25,545.49 into the annuity.

In May 1997, Mr. Bernadowski had a heart attack and could no longer work. His long-term disability benefits did not permit him to continue the

$1,500 monthly payments. Nonetheless, the annuity had grown to $32,000 in six years. In 2002, the Bernadowskis withdrew $23,500 from the annuity and placed it in other investments with Ameriprise.

In the meantime, on April 23, 2001, the Bernadowskis commenced this action against Ameriprise by writ of summons.[1] The Bernadowskis filed their complaint on December 11, 2013, and alleged violations of Pennsylvania's UTPCPL, fraudulent and negligent misrepresentations, breach of fiduciary duty, and negligent supervision. Partial summary judgment was granted on their claims for breach of fiduciary duty and negligent supervision, and the Bernadowskis voluntarily dismissed the misrepresentation claims. At the time of trial, only claims under the UTPCPL remained.

At trial, Mr. Bernadowski acknowledged that Mr. Henderson advised him to increase his contribution into his company-matched qualified retirement fund by six percent, or $3,385 annually, but he did not follow that advice. N.T. Nonjury Trial, 5/21-24/18, at 39. Mr. Bernadowski testified that Mr. Henderson told him that, "[t]he $39,000 would be invested in the flexible annuity to provide enough funds for me to retire at age 60," but admitted that he did not transfer the recommended sum. Id. On direct examination, Mr.

_____

[1] The Bernadowskis opted out of a class action filed against Ameriprise. The instant case was one of hundreds filed in Allegheny County against various insurance companies for deceptive sales of life insurance policies and annuities. The cases were designated as complex, and assigned to the Honorable R. Stanton Wettick, Jr. Cases against Metropolitan Life Insurance were tried first, and cases against other insurers were stayed during that time.

Bernadowski was shown the model portfolio allocating fifty percent of his investment to growth funds, forty-five percent in growth/income funds, and five percent into income funds, which had annualized historic rate of return of 11.25 percent.[2] Mr. Bernadowski testified that he was told he would receive an 11 percent interest rate from the annuity. Id. at 54.

On cross-examination, Ameriprise established that the Bernadowskis remained clients, and Mr. Bernadowski testified that he continued to see Michael Carretta twice per year over twenty-two years regarding his other investments with Ameriprise. Id. at 63. Mr. Carretta was at the meeting where the annuity application was completed. Id. at 62. Counsel for Ameriprise used Mr. Bernadowski's deposition testimony to refute his claim that Mr. Henderson guaranteed an eleven percent return or showed him a document that promised such a return. Id. at 97. Both Mr. Henderson and Mr. Carretta testified that they do not make promises or guarantees about rates of return. Moreover, the documents themselves disclaimed any notion that such rates were future projections, and explained that they were "estimated before-tax rate of return based on historic data" and not a "guarantee" that this type of investment portfolio would continue to perform

_____

[2] There was no allegation that the historic rate of return of 11.25 percent was a misrepresentation. While Appellants attempted to characterize the model portfolio as a projection of future returns in excess of eleven percent, the trial court was unpersuaded that such a representation was made. In light of Mr. Bernadowski's goal to retire at age sixty, he had only ten years in which to attempt to make up the significant savings shortfall to accomplish that goal. Equities, whether in mutual funds or an annuity, were the only vehicle that could possibly yield the rate of return necessary.

as it had in the past. Plaintiffs' Exhibit 4 at 20 (Financial Management Proposal, Model Portfolio) (discussed at N.T. Nonjury Trial, 5/21-24/18, at 74-75).

The case was tried non-jury before the Honorable Michael A. Della Vecchia from May 21 through 24, 2018. On June 4, 2018, the court entered a verdict in favor of Ameriprise. The court concluded that Ameriprise did not make any false representations, written or oral, about the annual return from the variable annuity. The court found no promise or guarantee of an eleven percent return, and that the documents adequately conveyed that the returns were not future projections. Following the denial of post-trial motions, judgment was entered on the verdict on July 31, 2018.

The Bernadowskis timely appealed and complied with the trial court's directive to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and the court issued its opinion. The Bernadowskis present multiple issues for our review:

1. The trial court erred in determining that Plaintiffs failed to prove by a preponderance of the evidence that [Ameriprise] had violated the UTPCPL since the greater weight of the evidence supported a finding that [Ameriprise] made knowing misrepresentations in the sale of the deferred variable annuity, that Plaintiffs justifiably relied upon those misrepresentations in purchasing the deferred variable annuity from [Ameriprise], and suffered financial harm as a result thereof.

2. The trial court erroneously made the following factual determinations contrary to the greater weight of the evidence:

    (a) The information provided to John Bernadowski regarding the deferred variable annuity contained

sufficient disclaimer language to inform or which should have informed the Bernadowskis that the product he was purchasing would not earn an consistent annualized rate of return of 11% as alleged by Plaintiff to have been represented at the time of sale;

(b) Defendant Henderson, as a licensed insurance agent and the Bernadowskis' Financial Advisor, provided sufficient information to John Bernadowski such that he knew or should have known that the product he was purchasing would not earn a consistent annualized rate of return of 11% as alleged by Plaintiff to have been represented at the time of sale;

(c) That Plaintiffs knew or should have known that the representations regarding the performance of the deferred variable annuity made at the time of sale were not guaranteed and/or that Defendants made no representations as to the future performance of the deferred variable annuity at the time of sale;

(d) That Plaintiffs had suffered no ascertainable loss as result of [Ameriprise's] misrepresentations.

3. The trial court erred in finding that Mr. Bernadowski's decision to remain with American Express Financial Advisors, and to rely upon investment advice provided by Michael Carretta after Mr. Bernadowski learned that misrepresentations had been made by Defendant Henderson with regard to the deferred variable annuity was relevant to the determination of whether misrepresentations had been made in the sale of the deferred variable annuity.

4. The trial court erred in finding that Plaintiffs did not prove by a preponderance of the evidence that [Ameriprise] possessed the necessary scienter to prove a violation of the UTPCPL.

Appellants' brief at 3-4 (unnecessary capitalization omitted).

In this appeal, we are reviewing the decision of a trial court following a non-jury trial. We begin with the applicable standard and scope of review.

Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law.

We will respect a trial court's findings with regard to the credibility and weight of the evidence unless the appellant can show that the court's determination was manifestly erroneous, arbitrary and capricious or flagrantly contrary to the evidence.

J.J. DeLuca Co. v. Toll Naval Assocs., 56 A.3d 402, 410 (Pa.Super. 2012) (citations and quotation marks omitted). We will reverse the trial court only if its findings are based on an error of law or unsupported by competent evidence of record. Boehm v. Riversource Life Ins. Co., 117 A.3d 308, 321 (Pa.Super. 2015).

Although the Bernadowskis couch each issue in terms of trial court error, the alleged error in each instance is that the trial court's findings are against the weight of the evidence. In such cases, our review is exceptionally limited.

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

- 7 -

> It is not the role of an appellate court to pass on the credibility of witnesses; hence[,] we will not substitute our judgment for that of the factfinder. Thus, the test we apply is not whether we would have reached the same result on the evidence presented, but rather, after due consideration of the evidence which the trial court found credible, whether the trial court could have reasonably reached its conclusion.

Fazio v. Guardian Life Ins. Co. of Am., 62 A.3d 396, 413 (Pa.Super. 2012) (internal quotation marks and citations omitted). "We will respect a trial court's findings with regard to the credibility and weight of the evidence unless the appellant can show that the court's determination was manifestly erroneous, arbitrary and capricious[,] or flagrantly contrary to the evidence." J.J. Deluca Co., supra at 410 (quoting Ecksel v. Orleans Const. Co., 519 A.2d 1021, 1028 (Pa.Super. 1987)).

This is a cause of action under the UTPCPL, 73 P.S. § 201-2 et seq. The Bernadowskis alleged that Ameriprise made misrepresentations violative of § 201-2(4)(v), (vii), (ix), (xiv), (xv), and the pre-1997 amendment version of the catchall provision of the UTPCPL, § 201-2(4)(xxi).[3] The latter prohibited "'fraudulent conduct' that created a likelihood of confusion or misunderstanding." Id. In order to prevail on a claim under the UTPCPL,

_____

[3] On December 4, 1996, effective in sixty days, the Legislature amended the catchall provision of the UTPCPL, 73 P.S. § 201-2(xxi), to prohibit "deceptive conduct" as well as fraudulent conduct. In Gregg v. Ameriprise Fin., Inc., 195 A.3d 930, 937 (Pa.Super. 2018), this Court held that the amendment "expanded the UTPCPL's protections beyond fraudulent representations[,]" but that we had mistakenly clung to the pre-amendment view that a showing of fraud was necessary to maintain a cause of action. The parties agreed herein that this cause of action pre-dated the 1997 amendment, and that a showing of fraudulent conduct was necessary for the Bernadowskis to prevail.

plaintiffs are required to prove all elements of common law fraud by a preponderance of the evidence. Those elements are: "(1) misrepresentation of a material fact; (2) scienter; (3) intention by the declarant to induce action; (4) justifiable reliance by the party defrauded upon the misrepresentation; and (5) damage to the party defrauded as a proximate result." Boehm, supra at 324 (quoting Ross v. Foremost Ins. Co., 998 A.2d 648, 654 (Pa.Super. 2010)).

The Bernadowskis argue that the trial court erroneously limited its inquiry as to whether there had been fraud for purposes of the UTPCPL to the question of whether Ameriprise or its agents misrepresented a guaranteed return rate of eleven percent with the proposed variable annuity. They claim that their UTPCPL claim was not premised on such a guarantee, but rather, on "Defendants' failure to explain to [Mr.] Bernadowski that they lacked any reasonable basis to project rates of return into the future." Appellant's brief at 52. They add that, "the use of [the financial analysis and model portfolio] and the emphasis placed on the 11% rate of return created a reasonable expectation in [Mr.] Bernadowski that [Ameriprise] had a reasonable basis for projecting an 11.25% [rate] of return, and that the annuity was the vehicle to provide that 11.25% return." Appellants' brief at 49. In support, they cite Eisenberg v. Gagnon, 766 F.3d 770 (3d Cir. 1985) (applying Pennsylvania law), where proof that Ameriprise "presented future returns without disclosing that they lacked any reasonable basis to believe that the projected future

returns were attainable" was sufficient to support a violation.  Appellants' brief at 42.  The Bernadowskis argue further that, even absent an affirmative misrepresentation, the distinction between "historical" rates and the likely return in the future was misleading to the unsophisticated investor like Mr. Bernadowski.

The Bernadowskis' attempt to recast their claim is unavailing.[4]  Counsel for the Bernadowskis represented to the trial court multiple times, "Our claim is based upon the promise of the 11 percent return, so whatever amount [Mr. Bernadowski] put in, he would get 11%."  N.T. Nonjury Trial, 5/21-24/18, at 460; see also id. at 451, 461 (stating that "11% return is the alleged fraudulent misrepresentation" and reiterating position that the representation at issue was that if the Bernadowskis followed Ameriprise's allocations, they

_____

[4] Appellants complain that the trial court's emphasis "on the amount of money paid into the annuity demonstrates its mistaken perception of Bernadowski's claim, since the misrepresentation alleged in the case was not that Bernadowski could retire at age 60, but rather that the annuity could reasonably be expected to have a rate of return of 11% for at least ten years." Appellants' brief at 70.  However, the trial court was merely addressing Mr. Bernadowski's testimony that he was told by Mr. Henderson that, "The $39,000 would be invested in the flexible annuity to provide enough funds for me to retire at age 60." N.T. Nonjury Trial, 5/21-24/18, at 39.  In anticipation that Mr. Bernadowski would suggest that this was a fraudulent misrepresentation upon which he relied in purchasing the variable annuity, the court rejected that notion.  The court concluded that Mr. Bernadowski's failure to follow through on the multi-pronged approach advocated by Ameriprise, including the advice that he increase by six percent his yearly contributions to his employer's retirement plan, foreclosed any reasonable likelihood that he would have the funds necessary to retire at age sixty.

would get an 11 percent return). The Bernadowskis argued that the handwritten box around the dollar amounts in the eleven percent column in the financial analysis evidenced Ameriprise's representation that a variable annuity would produce a guaranteed rate of return in excess of eleven percent.[5] Their damages were calculated on the difference between the "promised rate" of eleven percent and the actual rate of return. In light of the foregoing, we reject the Bernadowskis' contention that the court erred in focusing on the eleven percent return in concluding that the Bernadowskis failed to prove the fraudulent misrepresentation by a preponderance of the evidence.

After due consideration of the evidence which the trial court found credible, we find that the trial court reasonably reached its conclusion that Ameriprise did not misrepresent an eleven percent return. Mr. Bernadowski candidly admitted that it was difficult to remember what was said and who was present in 1996. Id. at 83. When his counsel asked him at trial, "What interest rate were you told you were going to receive in this annuity?" he responded unequivocally, "11 percent." Id. at 54. However, on cross-examination, Mr. Bernadowski wavered. Ameriprise introduced Mr. Bernadowski's deposition testimony where he professed to have little

---

[5] The trial court found that the handwritten notation was nothing more than "a listing of performance if various rates of interest were earned[,]" and did not state that an eleven percent return was guaranteed. Trial Court Opinion, 10/26/18, at 8.

recollection of what Mr. Henderson stated in the third meeting, except that "[Mr. Henderson] said if we, quote, if this is done right, your flexible annuity will – it will help in the long run, close quote." Id. at 89 (quoting deposition of John Bernadowski, at 50). He initially testified that Mr. Henderson showed him documents depicting an eleven percent return, but upon further questioning, he clarified that he "didn't say that [Mr. Henderson] showed me a document with that on." Id. at 96 (quoting deposition of John Bernadowski at 131). He corrected, "I said I found a document with that on." Id. Mr. Bernadowski further conceded that the document actually said, "a flexible annuity could earn you 11 percent a year."[6] Id. at 97.

Mr. Henderson and Mr. Carretta both testified that they never guaranteed or represented to a client that he or she would receive a particular rate of return on a variable annuity. See id. at 360, 407. The "model portfolio" expressly stated that it was based on "the annualized historic rate

_____

[6] At trial, Ameriprise pointed out that Mr. Bernadowski's deposition testimony changed considerably after he spent the one-hour lunch break with his counsel. After lunch, Mr. Bernadowski testified as follows in his deposition:

> My total goals when I came there was to retire at age 60. I told Mr. Henderson I had that $23,000 and it was given to me by my dad, and I took care of my dad when he was elderly, and that money was not replaceable. And when he suggested the variable annuity, he said it would gain 11 percent, quote, and you'll be able to attain your goals to retire at age 60, plus defer taxes, close quote.

N.T. Nonjury Trial, 5/21-24/18, at 92 (quoting Deposition Testimony of John Bernadowski, at 59).

of returns." Plaintiffs' Exhibit 4 at 20 (Model Portfolio). The returns are "estimated" and "not an illustration or guarantee of the performance of any specific investment." Id. It cautioned further that, "[t]here is no guarantee that this combination of investment categories will perform as they have in the past." Id.

Based on the oral testimony and the written documentation, the court found there was no fraudulent misrepresentation by Mr. Henderson or other Ameriprise personnel of a guaranteed eleven percent rate of return on the variable annuity. Ameriprise's explanation of the historical rates, together with the written disclaimer, were sufficient to apprise Mr. Bernadowski that an eleven percent rate of return in the future was not guaranteed. Viewing the evidence in the light most favorable to Ameriprise as the verdict winner, we find support for the trial court's conclusion, and we have no basis to disturb it.

Next, the Bernadowskis claim that the court, sitting as factfinder, made the following factual findings that were contrary to the greater weight of the evidence: (1) the disclaimer language was sufficient to inform Mr. Bernadowski that there was no guaranteed rate of return of eleven percent; (2) Mr. Henderson, as a licensed financial adviser, provided enough information to Mr. Bernadowski to inform him that the annuity would not earn a consistent rate of eleven percent; (3) the Bernadowskis knew or should have known when they purchased the variable annuity that its future performance

was not guaranteed; and (4) the Bernadowskis suffered no ascertainable loss as a result of Ameriprise's alleged misrepresentations.

The court considered the disclaimer language and found it adequate to apprise the Bernadowskis that the estimated returns were historic only and not a guarantee of future performance. Trial Court Opinion, 10/25/18, at 9. Absent a misrepresentation, the trial court did not need to reach the issue of whether the Bernadowskis justifiably relied or whether they suffered an ascertainable loss. Appellants are simply rearguing the facts without developing any persuasive argument that the court, sitting as fact finder, could not have reached its conclusions on the weight of the evidence presented. As Ameriprise correctly notes, viewing the evidence in the light most favorable to it as the verdict winner, and giving the findings of fact of the trial judge the same weight and effect as a jury verdict, we have no basis to reverse the trial court's findings. See e.g., Rissi v. Cappella, 918 A.2d 131, 136 (Pa.Super. 2007).

Next, the Bernadowskis allege that the trial court erred in finding it relevant that Mr. Bernadowski opted to remain a client of Ameriprise after learning that there was no guaranteed rate of return of eleven percent on the annuity. We note preliminarily, the Bernadowskis' counsel did not object to the admission of such evidence, and cannot now be heard to complain that it was error to admit it. See Pa.R.E. 103(a)(1) (providing in order to preserve challenge to admission of evidence, there must be "a timely objection, motion

to strike or motion in limine stating the specific ground of objection"); see also McEwing v. Lititz Mut. Ins. Co., 77 A.3d 639, 649 (Pa.Super. 2013) (finding issue of expert's qualifications waived on appeal where party did not contemporaneously object on that basis). Furthermore, the factfinder was free to consider all competent evidence of record. In making credibility determinations as to whether Ameriprise fraudulently misrepresented the rate of return on a variable annuity, the trial court could consider whether one allegedly betrayed by a professional in a position of trust would reasonably choose to continue that relationship. This allegation of error is wholly lacking in merit.

Finally, the Bernadowskis contend that the trial court erred in finding that they did not prove by a preponderance of the evidence that Ameriprise possessed the necessary scienter to prove a violation of the UTPCPL. Again, absent a misrepresentation, the trial court did not have to reach the issue of scienter, and furthermore, it did not make a specific finding as to scienter. The issue is meritless.

For all of the foregoing reasons, the Bernadowskis' claims warrant no relief.

Judgment affirmed.

Judge Musmanno joins the memorandum.

Judge Nichols concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>1/24/2020</u>